**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

KEITH JUDD,

Plaintiff,

vs. No. CV 97-1092 SC/RLP

CORONADO MALL MANAGEMENT,
CORONADO MALL SECURITY,

Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Plaintiff's "Motion to Amend Chelsea's Street Pub as Defendant," which in essence is a motion to amend the Complaint to add Chelsea's Street Pub as a party Defendant. The motion was filed September 24, 1997 (Doc. No. 7), and on Defendant STT, Inc.'s[1] Motion to Dismiss, filed September 30, 1997 (Doc. No. 10).

Plaintiff brings his complaint under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. The complaint alleges as follows. Plaintiff suffers from bipolar illness. The Defendants have adopted a policy of excluding Plaintiff from the Coronado Mall in Albuquerque, New Mexico based upon undifferentiated fears associated with his mental illness. In September of 1994 he suffered an attack of his bipolar illness while shopping at the Coronado Mall and was taken to UNM Mental

[1] STT, Inc. is the entity designated incorrectly in the Complaint as "Coronado Mall Security."

Health Center for emergency treatment. After this event, Plaintiff's brother was told that Plaintiff should wait a couple of weeks before entering the mall because some people were scared. In November 1996 Plaintiff went to the Coronado Mall to shop for Christmas gifts and was told by Coronado Mall Security that he was banned from the mall for life. Plaintiff wrote letters to Coronado Mall Management and Mall Security but none of them were answered. Plaintiff called Coronado Mall Security but was not allowed in the mall.

In July and August 1997 Plaintiff called Coronado Mall Security and Mall Management asking for permission to work for a band that was playing at Chelsea's Street Pub in the mall. His calls were never returned. He is otherwise qualified to be in the mall and work for bands playing at Chelsea's Street Pub. He prays for damages, and for injunctive relief "permitting him to work or otherwise participate at the Coronado Mall."

Heitman Properties of New Mexico, Ltd. ("Heitman") filed an Answer on behalf of the Defendant identified incorrectly in the complaint as "Coronado Mall Management." Heitman admits some of Plaintiff's allegations and denies others, stating that "Plaintiff has been told on not less than four occasions in 1994 and 1995 to leave Coronado Center based on Plaintiff's stalking of store employees, based on Plaintiff's going into women's apparel stores and dressing in women's clothing; based on Plaintiff's attempting to strike employees of the Defendant's contracted security staff; based on criminal trespass citations issued by the City of Albuquerque police; among other

conduct." Ans. Heitman ¶3 at 1-2. Plaintiff denies these allegations.

**I. Motion to Amend.** Federal Rule of Civil Procedure 15(a) allows amendment of a pleading and provides that leave to amend "shall be freely given when justice so requires." Unless a motion to amend is untimely, or the amendment would be futile, leave to amend is usually granted. The motion to amend seeks to add Chelsea's Street Pub as a defendant.[2] Neither Defendant has filed a response to Plaintiff's motion. The motion was timely filed, and so I shall examine the proposed amendment for futility.

Plaintiff alleged in ¶5 of his Complaint that in 1997 he asked for permission to work for a band that was playing at Chelsea's Street Pub in the Coronado Mall. Defendant Heitman answered as follows: "Defendant admits that its personnel received calls and letters from Plaintiff in 1997 wherein he asked if he could come onto the premises of Coronado Center. ... [Heitman] has been advised by certain businesses including Chelsea's Street Pub that they do not desire to have Plaintiff on their premises." Ans. Heitman ¶4 at 2.

Under Title III of the ADA, which prohibits discrimination against individuals on the basis of disability in places of public accommodation, 42 U.S.C. § 12182(a),

[2] The Federal Rules of Civil Procedure permit the addition of defendants. "All persons ... may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a). "Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." Fed. R. Civ. P. 21.

restaurants, bars and other establishments serving food or drink are defined as public accommodations. 42 U.S.C. § 12181(7)(B). Bipolar affective disorder (formerly called manic depressive psychosis), if sufficiently severe, has been recognized as a disability under the ADA. Den Hartog v. Wasatch Academy, 129 F.3d 1076, 1081 (10th Cir. 1997).[3] If Plaintiff is disabled by his bipolar illness, and if Chelsea's has excluded Plaintiff from its premises on the basis of his disability, or if it participated in a decision with either of the existing Defendants to exclude Plaintiff from its premises, it could be liable for a violation of Title III of the ADA. Therefore, I find that the amendment is not necessarily futile and it should be allowed.

Plaintiff must amend his complaint to include allegations against Chelsea's Street Pub, and have the amended complaint and summons served on Chelsea's Street Pub, with copies to the other Defendants.[4] He should also amend to correctly identify the other Defendants. Plaintiff will be given 30 days from the date of this opinion to file his amended complaint.

**II. Motion to Dismiss.** The motion to dismiss is brought only by STT, Inc. (incorrectly designated in the complaint as "Coronado Mall Security"). Defendant STT first argues that the ADA claim is not cognizable because Plaintiff has failed to exhaust

[3] The ADA defines disability to include "mental impairment that substantially limits one or more ... major life activities. ..." 42 U.S.C. § 12102(2)(A).

[4] Apparently Plaintiff has been serving copies of his pleadings on the Defendants by sending them to the address for Coronado Mall. This is unacceptable. Plaintiff must comply with Rule 5(b) of the Federal Rules of Civil Procedure, which requires that when serving pleadings on a party represented by an attorney, it is the attorney that must be served.

his administrative remedies under the Act. Secondly, Defendant STT contends it is not liable under the employment discrimination portion of the Act because it has never had an employment relationship with Plaintiff, and Plaintiff has never attempted to apply for employment with STT. Thirdly, Defendant STT argues that it cannot be liable under the public accommodation section of the Act because it is not a "person who owns, leases (or leases to), or operates a place of public accommodation," as required by the ADA. Finally, Defendant STT argues that Plaintiff cannot qualify for injunctive relief because he has not demonstrated a substantial likelihood of success on the merits, and because he has not alleged that he will suffer irreparable harm as a result of being excluded from the mall. I shall discuss these issues in turn.

*1. Failure to Exhaust Administrative Remedies.* Defendant STT contends that Plaintiff has failed to exhaust his administrative remedies under both Title I and Title III of the ADA. Title I proscribes discrimination on the basis of disability by certain private employers against employees and applicants for employment. 42 U.S.C. §§ 12111-12117. Title III proscribes discrimination on the basis of disability against members of the public in privately-owned places of public accommodation. 42 U.S.C. §§ 12181-12189.

*Title I.* A plaintiff alleging a violation of Title I of the ADA must follow the procedures set forth in Title VII of the Civil Rights Act. *See* 42 U.S.C. § 12117(a) (adopting procedures set forth in 42 U.S.C. § 2000e-5 for ADA Title I claims). A Title I plaintiff must file a charge of discrimination with the EEOC or a state antidiscrimination

agency within 300 days of the accrual of his cause of action. 42 U.S.C. § 2000e-5(e)(1);[5] Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 388 n.2 (1982). Plaintiff does not contend that he ever filed a charge of discrimination with the EEOC against Defendant STT. Therefore, his Title I claim must be dismissed against Defendant STT.[6]

*Title III.* Although Plaintiff focuses mainly on his alleged loss of employment, his *pro se* complaint can be construed as seeking relief under Title III, which is enforced through § 12188(a)(1).

> The remedies and procedures set forth in section 2000a-3(a) of this title are the remedies and procedures this subchapter provides to any person who is being subjected to discrimination on the basis of disability in violation of this subchapter or who has reasonable grounds for believing that such person is about to be subjected to discrimination in violation of section 12183 of this title [dealing with physical barriers]. Nothing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions.

42 U.S.C.§ 12188(a)(1). The section referred to, 42 U.S.C. § 2000a-3(a), provides that

---

[5] New Mexico is a deferral state, in that it has a state agency, the New Mexico Human Rights Commission, authorized to investigate and act on discrimination claims, which extends the charge filing deadline from 180 days to 300 days. Mascheroni v. Bd. of Regents of the Univ. of California, 28 F.3d 1554, 1557 n.3 (10th Cir. 1994).

[6] This dismissal will be without prejudice, given the possibly continuous violation of Plaintiff's exclusion from the mall. *See* Purrington v. Univ. of Utah, 996 F.2d 1025, 1028-29 (10th Cir. 1993) (discussing continuing violation exception to charge-filing deadline). If Plaintiff has had more recent job prospects within the past 300 days, he may be able to file a timely charge with the EEOC or the New Mexico HRC. *See, also,* Biester v. Midwest Health Services, Inc., 77 F.3d 1264, 1267-69 (10th Cir. 1996) (discussing equitable tolling due to mental illness). I express no opinion on whether such a charge would be timely, or on whether Plaintiff can state a claim under Title I against an "employer" in the circumstances of this case.

an aggrieved individual may sue for injunctive relief:

> Whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice prohibited by section 2000a-2 of this title [prohibiting discrimination in places of public accommodation], a civil action for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order, may be instituted by the person aggrieved and, upon timely application, the court may, in its discretion, permit the Attorney General to intervene in such civil action if he certifies that the case is of general public importance. Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the civil action without the payment of fees, costs, or security.

Defendant STT contends that a Title III plaintiff may not file suit under the ADA until 30 days after notice has been given to the EEOC or other administrative agency pursuant to 42 U.S.C. § 2000a-3(c), a section not explicitly referenced in § 12188(a) of Title III. Section 2000a-3(c) of Title 42 of the United States Code provides:

> In the case of an alleged act or practice prohibited by this subchapter which occurs in a State, or political subdivision of a State, which has a State or local law prohibiting such act or practice and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no civil action may be brought under subsection (a) of this section before the expiration of thirty days after written notice of such alleged act or practice has been given to the appropriate State or local authority by registered mail or in person, provided that the court may stay proceedings in such civil action pending the termination of State or local enforcement proceedings.

New Mexico has a state law, the New Mexico Human Rights Act, N.M.S.A. 1978

§ 28-1-1 *et seq.* (1996 Repl. Pam.), which prohibits physical or mental handicap discrimination in places of public accommodation, Id., § 28-1-7(F). The Human Rights Act creates the New Mexico Human Rights Commission ("HRC"), Id., § 28-1-3(A), which is a state authority authorized to grant or seek relief from such discriminatory practice, Id., § 28-1-4(B). Thus the question is whether Title III of the ADA required plaintiff to give notice to the New Mexico HRC at least 30 days before filing suit.

There is disagreement among the district courts as to whether § 2000a-3(c) applies to Title III ADA claims. Some courts impose the 30-day notice requirement, Mayes v. Allison, 983 F. Supp. 923, 925 (D. Nev. 1997) (finding ambiguity in statute because courts have decided exhaustion question differently, and interpreting legislative history to require exhaustion); Howard v. Cherry Hills Cutters, Inc., 935 F. Supp. 1148, 1150 (D. Colo. 1996); White v. Denny's, Inc., 918 F. Supp. 1418, 1423 (D. Colo. 1996).

Other courts find there is no exhaustion requirement. Doukas v. Metropolitan Life Ins. Co., 1997 WL 833134, *3 (D.N.H. 1997) (Judge Devine repudiating his contrary interpretation in earlier case of Daigle v. Friendly Ice Cream Corp., 957 F. Supp. 8, 9 (D.N.H. 1997)); Bercovitch v. Baldwin School, 964 F. Supp. 597, 605 (D.P.R. 1997), *rev'd on other grounds*, 133 F.3d 141 (1st Cir. 1998) (circuit court declining to decide exhaustion question); Soignier v. American Board of Plastic Surgery, 1996 WL 6553, *1 (N.D. Ill.), *aff'd* 92 F.3d 547 (7th Cir. 1996), *cert. denied* 117 S.Ct. 771 (1997); *see also* Lewis v. Aetna Life Ins. Co., 993 F.Supp. 382, 387 (E.D. Va. 1998) (filing of charge with EEOC did not toll statute of limitations as to Title III claim for discrimination in public

accommodation because Title III contains no requirement to exhaust administrative remedies).

I do not find an ambiguity in the statute. In my view, the lack of an explicit statutory exhaustion requirement means that exhaustion is not required. Because § 12188(a) of the ADA incorporates only the enforcement remedies and procedures of 42 U.S.C. § 2000a-3(a), and does not adopt § 2000a-3(c), I conclude that Title III does not require prior notice to the New Mexico HRC.

*2. Employment Discrimination.* Defendant STT argues that it cannot be liable under Title I of the ADA because it is not Plaintiff's employer, nor has Plaintiff alleged that he ever attempted to apply for employment with STT. It would be an interesting inquiry to explore whether a person or entity who is not the plaintiff's employer, who discriminates against the plaintiff on the basis of his or her disability by excluding the plaintiff from a place of public accommodation, which in turn makes it impossible for the plaintiff to get to his or her place of employment or attempted employment in such place, could be liable under Title I of the ADA.[7] Because the Title I claim against Defendant STT is being dismissed for failure to file a charge with either the EEOC or the New

---

[7] *See* Spirt v. Teachers Ins. & Annuity Ass'n, 691 F.2d 1054, 1063 (2d Cir. 1982), *vacated and rem'd on other grounds*, 463 U.S. 1223 (1983), *reinstated and modified on other grounds*, 735 F.2d 23 (2d Cir. 1984) (term "employer" in Title VII "sufficiently broad to encompass any party who significantly affects access of any individual to employment opportunities, regardless of whether that party may technically be described as an 'employer' ... as that term has generally been defined at common law."). *See also* Owens v. Rush, 636 F.2d 283, 287 (10th Cir.1980) (In Title VII, "liberal construction is ... to be given to the definition of 'employer.'").

Mexico HRC, however, I decline to examine whether STT could be liable for employment discrimination in this situation.

*3. Public Accommodation.* Defendant STT next argues it cannot be liable under Title III because it does not own, lease or operate Coronado Mall.

Title III of the ADA prohibits discrimination in places of public accommodation:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who *owns, leases (or leases to), or operates* a place of public accommodation.

42 U.S.C. § 12182(a) (emphasis added). Shopping centers are defined as public accommodations. 42 U.S.C. § 12181(7)(E).

The existing case law indicates that more than one person or entity may be liable as operators if each one had sufficient control over the operation of the place of public accommodation. *See, e.g.,* Neff v. American Dairy Queen Corp., 58 F.3d 1063, 1066-69 (5th Cir. 1995) (holding that franchisor was not "operator" for purposes of removal of existing architectural barriers in store because franchise agreement did not give franchisor specific controls over modification of store to improve its accessibility to disabled); Cortez v. Nat'l Basketball Ass'n, 960 F. Supp. 113, 115 (W.D. Tex. 1997) (applying Neff to decide that franchisor was not "operator" in absence of specific controls over modification of franchise for improving handicap accessibility); United States v. Days Inns of America, Inc., __ F. Supp. __, 1998 WL 122386, *3-5 (C.D. Ill. 1998) (both

corporate headquarters and its parent corporation liable for ADA violation in construction of hotel inaccessible to disabled persons because both considered "operators" of hotel, where both exercised careful control over design and construction of hotel); Howe v. Hull, 874 F. Supp. 779, 787-88 (N.D. Ohio 1994) (individual on-call physician liable as "operator" of hospital where physician was in position of authority and had discretion over whether to admit patient with HIV infection, rather than just following hospital policy); Aikins v. St. Helena Hosp., 843 F. Supp. 1329, 1335 (N.D. Cal. 1994) (physician not "operator" of hospital because he had no power to control hospital policy regarding providing interpreter for deaf spouse of emergency room patient).

At this point in the litigation, I have no evidence about the operation of Coronado Mall. If the security company has been given sufficient control and/or has exercised discretion in decisions about whom to exclude from the mall, it may be found to be an operator within the meaning of Title III. Whether Defendant STT does or does not have sufficient control over this aspect of the operation of Coronado Mall, or whether STT has exercised discretion in such decisions, are not matters that can be decided on a motion to dismiss. Therefore, the motion will be denied on this basis.

*4. Injunctive Relief.* Defendant STT argues that Plaintiff would not be entitled to a permanent injunction because he cannot demonstrate a substantial likelihood of success on the merits, and because he has not alleged that any irreparable harm will result to him from being excluded from the mall. In the context of a case seeking only a permanent, as opposed to a preliminary, injunction, the likelihood of success on the merits is not a

proper inquiry at this time. Either Plaintiff will prevail on the merits (on summary judgment or at trial) or not. If not, no relief will be forthcoming.

If Plaintiff does prevail on the merits, damages are not available for a violation of Title III of ADA, A.R. v. Kogan, 964 F. Supp. 269, 271 (N.D. Ill. 1997), but prospective injunctive relief is available. 42 U.S.C. §§ 12188(a)(1) and 2000a-3(a). Before a permanent injunction would be granted, there would have to be a showing that harm to Plaintiff is likely to occur in the future. City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983); Hoepfl v. Barlow, 906 F. Supp. 317, 320-21 (E.D. Va. 1995). Here, Plaintiff has alleged that he has been permanently banned from the mall for life. This is sufficient to allege irreparable harm under Title III of the ADA.[8]

**NOW, THEREFORE, IT IS ORDERED** that Plaintiff's motion to amend the Complaint to add Chelsea's Street Pub as a party Defendant (Doc. No. 7) is hereby GRANTED. Plaintiff has 30 days from the date of this Order to file his Amended Complaint.

**IT IS FURTHER ORDERED** that the Motion to Dismiss filed by Defendant STT (incorrectly designated in the Complaint as Coronado Mall Security) (Doc. No. 10)

---

[8] Another requirement for an injunction, that the harm to the plaintiff outweigh the potential harm to the public interest, *see* Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc., 805 F.2d 351, 356-57 (10th Cir. 1986), will be addressed under the "direct threat" exception provided in the ADA. *See* 42 U.S.C. § 12182(b)(3) (defining direct threat as significant risk to health or safety of others that cannot be eliminated by modification of policies, practices, or procedures or by provision of auxiliary aids or services); School Bd. of Nassau County, Florida v. Arline, 480 U.S. 273, 287-88 (1987); Den Hartog, 129 F.3d at 1088-90; 28 C.F.R. § 36.208(c) (1996).

is hereby GRANTED IN PART and DENIED IN PART. The ADA Title I claim is hereby dismissed without prejudice as to STT; the Title III claim remains.

SENIOR UNITED STATES DISTRICT JUDGE

For Plaintiff: Keith Judd, Albuquerque, NM, *pro se*

Counsel for Defendant Heitman Properties of New Mexico, Ltd. ("Coronado Mall Management"): Richard M. Leverick, LEVERICK & MUSSELMAN, Albuquerque, NM

Counsel for Defendant STT, Inc. ("Coronado Mall Security"): Larry D. Beall and Gregory L. Biehler, BEALL & BIEHLER, Albuquerque, NM